OVID ALLEN, ADMINISTRATOR OF THE ESTATE OF WILLIAM STEAD SMITH v. ROBERT STEAD, EXECUTOR OF THE ESTATE OF WILLIAM STEAD.

*Construction of will.*

A will required the executors to put up a building on certain land and provided that "should it become necessary to sell real estate for the purpose of building" they might sell certain other specified premises.  The lot and buildings were to go to the testator's grandson, but in case the latter died under 18, "all

the real estate" was to go to the testator's brother. The grandson died at the age of 15, and his administrator claimed a quantity of personalty, not specifically bequeathed by the will, as belonging to the estate of his intestate as his grandfather's sole heir at law. *Held* that the will evidently intended that this residuum of personalty was to be used in building the stores, and that it therefore went with the lot on which they were to be put up, to the testator's brother.

Certiorari to Wayne Circuit Court. Submitted April 17. Decided June 4.

*Hoyt Post* and *Ashley Pond* for plaintiff in certiorari.

*Ward & Palmer* and *G. V. N. Lothrop* for defendant in certiorari.

GRAVES, J. The plaintiff in certiorari maintains that the residuum of the personalty of the estate of William Stead is not appropriated by his will and belongs, consequently, by force of the Statute of Distributions to the estate of plaintiff's intestate, who was sole heir-at-law of defendant's testator, the said William Stead, and this view has been strongly and ingeniously supported by counsel.

The essence of the proposition is found in the assumption that William Stead, notwithstanding he left a will, actually died intestate as to this residuum, and this claim is made not on account of the want of expressions in the will showing an intelligent attempt there to make a testamentary disposal, but upon the ground that the framework and terms of the will which concern the subject are too inaccurate and imperfect to be regarded as a valid testamentary disposition.

A careful scrutiny of the whole will\* is sufficient to

---

*THE WILL.

In the name of God, Amen.

I, William Stead, of the city of Detroit, in the county of Wayne, Michigan, do make and publish this my last will and testament, hereby revoking all former wills by me made.

And I do hereby appoint my brother, Robert Stead, and my friends A. Smith Bagg and Edward Chope, all of Detroit, executors of this my last will and testament.

show that Mr. Stead did not intend to die intestate as to any of his property, but contemplated that all his personal estate left after the payment of legacies, debts, expenses of administration and authorized expenses in the maintenance and education of his grandson, the plaintiff's intestate, would be consumed in putting up the buildings on lot twenty-seven. Not only so, but he also contemplated that it might be necessary to resort to a parcel of his real estate in order to swell the building fund sufficiently to carry out his purpose.

Now all admit that the real estate was actually dis-

I give and bequeath unto my brother, Robert Stead, for and during the term of his natural life, park lot number twenty-three (23), on the east side of Woodward avenue, in the city of Detroit, now occupied by him, till the said park lot is wanted for sale to raise money to build stores on lot twenty-seven (27), sec. eight (8). Then my brother, Robert Stead, shall receive, for relinquishing the right to said lot, two thousand dollars, one thousand dollars at the time of is removal, and one thousand dollars in one year thereafter, without interest.

I give and bequeath unto my brother Robert Stead's daughters, Sarah, Harriet, Alice and Mary, the sum of six thousand dollars ($6000) to be equally divided between them at the rate of five hundred dollars yearly, in semi-annual payments of two hundred and fifty dollars every six months, commencing on the first day of July after my decease till the full sum of six thousand dollars without interest is paid them. If at any time either of the daughters should have died before receiving the full amount of their legacy the remainder shall go to their offspring if any and no one else. Should my brother, Robert Stead, wish to relinquish the said park lot, No. 23, and give up possession I give unto Mrs. Robert Stead during her natural life, the house and lot, they now occupy, from Woodward avenue to the east of the barn on the west of the alley, as a homestead, my executors to pay all taxes on said lot so long has she shall occupy it as a dwelling for herself; should she rent it she shall then pay all taxes. My executors shall build on lot twenty-seven (27), section eight (8), of the Governor and Judges of the city of Detroit, corner of Woodward avenue and Clifford street, three good and substantial brick stores. If not built upon, and should it become necessary to sell real estate for the purpose of building, they may sell park lot twenty-three, and the undivided half of the north half of lot thirty-five, sec. seven (lot 35, sec. 7), Gov. and Judges east of Woodward avenue, reserving from sale the house and lot that I have made a gift to Mrs. Robert Stead during her natural life. After the payment of the foregoing legacies and of all of my just debts, funeral expenses, and all sums of money necessary for the building of said stores on lot 27, sec. 8, I give unto my grandson, William Stead Smith, all my real estate to do has he may please with excepting lot twenty-seven, sec. 8 (lot 27, sec. 8) Gov. and Judges. This lot I give to him, the said William Stead Smith, during his natural life, and at his death shall descend to his heirs, if any, and if not, and should live till he becomes eighteen years of age, he shall have the power and right to will all

posed of by the will and that in virtue of that disposi-
tion the city lot twenty-seven is now possessed by Robert
Stead, brother of the testator, and defendant in this
case, and my brethren think that the residuum of per-
sonalty in controversy was intended by the testator to
go with that lot and must be held to do so; and that
the technical considerations so ably pressed by counsel,
even if conceded to be valid and efficacious in other
ways cannot have the effect to disappoint the testator's
obvious wish and design that these two portions of his
fortune should certainly go into the same hands.

the property given to him in this will, even to lot twenty-seven,
section eight, of the Gov. and Judges of the city of Detroit, if there
is any apprehension of his death, and I wish him to do so, and to
leave to his uncle, Robert Stead all sufficient to keep him comfort-
able so long as he should live. I also wish that my executors will
preserve for my said grandson, William Stead Smith, all of his
mother's silver, and also my silver pitcher and the two silver gob-
lets, the piano, my gold watch, anything in fact that he should wish
to possess. My own furniture I give to my nieces, Sarah, Hattie,
Alice and Mary, in value same alike. My executors shall provide
for the support of my grandson's schooling, and my desire is that as
soon as he shall be of a suitable he shall be sent to one of the best
schools boarding schools to be found, and be educated sufficient for
mercantile life, and until he shall be sent away to school he shall
board and be taken care of by Mrs. Rose Aspinall, providing she
should be in a situation sufficiently able to take care of him, or
Mrs. Mary Bagg, wife of A. Smith Bagg, Esq. I have no one in
particular, wherever he is most happy there let him board, at the
same time I do not wish him to be taken care of by any one of his
relatives. I have sufficient reasons for so wishing, trusting my
executors will so arrange matters in this particular, and whoever
shall be appointed guardian, shall receive for his care and board a
sum sufficient, has my executors may deem proper. My executors
shall have the power at any time to substitute any other lady than
the one he may be with, providing every thing is not agreeable to
their wishes.

I would also wish that if the stores is not built on lot 27, sec.
8, Gov. and Judges, at my death that my executors would so
arrange matters with the mortgages and the real estate by convert-
ing them into money, and have the stores built as soon as possible,
providing they can be rented at a fair rent. I should wish such
stores to be erected as those of Mr. Chapoton on the corner of Grand
River and Woodward avenues, or as much better has my estate will
afford at the time, with columns in the brick between the stores,
somewhat equal to the Webber's or Freedman's stores; then they
can be converted into one or three stores has is wanted.

Should my grandson, William Stead Smith, be removed by death
before he is eighteen years of age all my real estate shall then
descend into the possession of my brother, Robert Stead, but I
again assert if my grandson, William Stead Smith should arrive at
the age of eighteen years he shall have the right and power to will
the said real estate in this will to whom he pleases. My dearly

Under no circumstances did he intend that his grandson should take the lot as *devisee* under the will and then bide his chance for this personalty as *distributee* under the statute. On the contrary he made it a marked and emphatic object of the will to render it certain that both should vest in the grandson in case of his attaining the prescribed age, and there appears to have been no idea of making any provision to allow the two interests to pursue separate channels of transmission or to fall eventually into separate hands.

Whether under the rules of law the bounty thus intended to accompany the lot should be regarded as land or as personalty, it was certainly property and property capable of being given by means of any terms clearly evincing that the testator so willed. And in the opinion of the court the terms here were sufficient to establish that it was the testator's will that his grandson should have the disputed property on reaching the specified age.

The provision for the testator's brother, Robert Stead, as *to this question,* does not appear to be distinguishable.

beloved wife before her death requested me to leave a few legacies to her relatives and friends, providing that William Stead Smith died before he arrived at the age of eighteen years, that he could will his property to whom he pleases. I shall now give those legacies has she wished me to do. I give unto my wife's sister, Jerusha Goodrich, of Cleveland, that was, five hundred dollars; also I give unto Lucy Spade, my niece, daughter of Mrs. Goodrich, five hundred dollars; she now resides in Columbus; also my nephew, William Stead Goodrich, of Cleveland, two hundred and fifty dollars; also I give unto Mrs. Rose Aspinall five hundred dollars. Should she become his guardian, appointed and approved by the executors, she then does not get the above legacy. I give unto Mrs. McWilliams two hundred and fifty dollars; also I give unto Mrs. Lizzie Fesby five hundred dollars. Such was the wish of my dearly beloved. These legacies is to be paid, if paid at all, one year after my grandson, Wm. Stead Smith, if he should leave this world before he makes his will. If Bishop McCoskry is living I should wish him to attend my funeral, for which I bequeath to him one hundred dollars for his services. Dated at Detroit this May sixth, A. D. 1870.

(Signed)            WM. STEAD.

Signed by the said testator William Stead for his last will and testament, in the present of us, who at his request, in his sight and presence, and in the presence of each other, have subscribed our names hereto as attesting witnesses.

(Signed)     .     ALONZO EATON, Detroit, Michigan.
                    HENRY CAMPAU, Detroit, Michigan.

The two descriptions of property are kept together as before, and no ground for supposing the testator intended separate destinations for them, is more apparent in the one case than in the other.

The only legitimate conclusion to be drawn is that he willed that the given personal interest should go where he willed the lot should go, and that the recipient of the one should be the recipient of the other.

The claim that some part of this fund came from an independent source and not from those securities the proceeds whereof the testator provided should accompany lot twenty-seven, and hence that such part at least is distinguishable and covered by the right the plaintiff insists on, is sufficiently answered at this time by the circumstance that the assumed conditions of fact are not found.

We do not know that what remains exceeds the amount which the fund from the mortgages would be entitled to after a marshalling of the assets. As the decision below is not shown to be erroneous it is affirmed with costs.

The other Justices concurred.